UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| KATHY GENLOT, | No. ED CV 04-01309-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed, except insofar as the Commissioner's decision, finding a closed period of disability from

October 3, 1998 through December 31, 1999, will incorporate Plaintiff's March 24, 1999 Title II application for disability insurance benefits.

This case has been here once before. Plaintiff filed concurrent claims for disability insurance benefits ("DIB") and Social Security supplemental income benefits ("SSI") on April 17, 2001. After proceeding through administrative denials, she filed an action in District Court, and the matter was remanded pursuant to a stipulated order. (Administrative Record ["AR"] volume 2, 373-377.) On remand, the Appeals Council ordered a new hearing, and specifically ordered the ALJ to consolidate Plaintiff's prior March 24, 1999 application for benefits with her April 17, 2001 application. (AR volume 2, 378-379.) The ALJ issued a partially favorable decision on July 21, 2004, finding Plaintiff to be disabled due to mental impairments from the period October 3, 1998 through December 31, 1999. (AR volume 2 at 221-238.) Plaintiff filed this action for judicial review from the final decision of the Commissioner based on that decision.

Plaintiff first asserts that the ALJ failed to properly summarize the testimony of the medical expert ("ME") concerning physical disabilities.[1]

Plaintiff first asserts (Argument A) that the ALJ failed to properly summarize the testimony of Dr. Landau, the physical disabilities ME. Plaintiff's apparent argument is that the ALJ "ought to accurately summarize the testimony accepted in the decision." (Motion at 5.) Specifically, Plaintiff focuses on Dr. Landau's

---

[1] The ALJ took testimony from two MEs, on issues of physical disabilities (Dr. Landau), and mental disabilities (Dr. Malancharuvil). (See AR, volume 2, 254-306.)

testimony that Plaintiff would be capable of occasional non-forceful gripping, grasping and twisting. (Motion at 4, citing AR volume 2 at 264.)

In the ALJ's lengthy decision, he provided summaries of much of the voluminous medical record. With regard to Dr. Landau's testimony, the ALJ noted, in pertinent part, that Dr. Landau opined that Plaintiff would be capable of occasional fine manipulation. (AR volume 2 at 232.)  Dr. Landau's exact testimony was that Plaintiff would be capable of occasional non-forceful gripping, grasping, or twisting. (AR volume 2 at 264.)

The apparent issue, as least as Plaintiff phrases it, would appear to be whether "non-forceful gripping, grasping, or twisting" is equivalent to "fine manipulation."  Plaintiff supplies no authority for her contention that there is a substantial difference between these terms.  Indeed, they would appear to be quite similar, but, even assuming that the ALJ totally adopted Dr. Landau's conclusions in their entirety (which, as the Court will discuss, is not necessarily the case), any error would be harmless.  The reason is that when the ALJ postulated a hypothetical question to the vocational expert ("VE"), he incorporated Dr. Landau's limitation of an individual who can do "occasional non-forceful gripping, grasping, and twisting." (AR, volume 2, 265.)  Therefore, any error would have been committed at Step Four of the sequential evaluation process, the point at which the ALJ must determine Plaintiff's residual functional capacity ("RFC"), in conjunction with determining whether Plaintiff can return to her past relevant work.  At Step Five, however, it is the Commissioner's responsibility to determine whether alternative work exists, presuming that Plaintiff cannot return to her past relevant

work, as is the case here. At Step Five, the ALJ posed a hypothetical which included the exact limitations found by Dr. Landau. Since the ALJ did not find that Plaintiff can return to her past relevant work, any error, therefore, would at best be harmless. Thus, Plaintiff's first issue does not substantiate her request for reversal or remand.

Plaintiff's second, related issue is that error was committed because the VE identified jobs whose physical requirements exceeded her found limitations. Plaintiff's argument would appear to be the following: that Plaintiff, who is capable of only occasional non-forceful gripping, grasping, or twisting, would not be capable of work in either of the identified occupations; that is, as a cashier II, which requires, according to the DOT, frequent handling and frequent fingering, or ticket seller, which has similar requirements. (See Motion at 8-9.)[2] Plaintiff acknowledges, but asserts to be deficient, the eroding of the occupational base described by the VE, based on Plaintiff's limitations. The record, however, does not support Plaintiff's assertion that the erosion occurred based on Plaintiff's limitation with regard to standing. (Motion at 9, citing AR volume 2, 267.) The previous page of the transcript clearly reveals that the ALJ eroded the number of available jobs in the two occupations based on Plaintiff's limitations as to fine manipulation. The following testimony ensued on that issue:

"VE: One question on the fine manipulation. If that's a maximum of three minutes at a time, how much time in between before that work could be done again?

---

[2] It would appear that Plaintiff herself equates non-forceful gripping, grasping, or twisting with fine manipulation and handling. (See Motion at 9, lines 14-17.)

4

```
 1        ALJ: Okay, Doctor, did you hear the question?
 2        ME1: Yes, I did.
 3        ALJ: Do you --
 4        ME1: Well they don't actually test that but I would think it
 5             would be reasonable that at five to ten minute intervals.
 6        ALJ: Okay.  So she could use her hands for find manipulation for
 7             three minutes at time every five to ten minutes?
 8        ME1: Yes, sir.
 9             (The vocational expert, SANDRA FIORETTI, having been duly
10             sworn, testified as follows:)
11    EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:
12    Q    With those -- with that clarification, Counsel or Ms.
13         Fioretti are there some unskilled jobs that could be
14         performed?
15    A    I think that would limit one to a very narrow range of
16         cashier two kind of work.  That is light and unskilled and
17         I would erode the jobs by 80 percent which would leave 1,000
18         regionally and 10,000 nationally.
19    Q    Any other jobs come to mind?
20    A    The same would go for ticket seller, ticket taker which are
21         light and unskilled eroded again by 80 percent would leave
22         --"
```

(AR volume 2, 266-267.)

The legal question is whether the record contains persuasive evidence to support a deviation from DOT requirements. See Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  The record in this case clearly indicates that the VE considered the specific limitations

5

1  highlighted by Plaintiff in her Motion. (See AR volume 2 at 302-304.)
2  The ME's testimony specified Plaintiff's limitations with regard to
3  fine manipulation, and the VE's testimony was clear that it was these
4  limitations (e.g., fine manipulation) which caused the significant
5  erosion of available jobs. (See AR volume 2 at 304-305.)
6      Plaintiff vigorously argues that the VE's testimony concerning
7  erosion of the job base is insufficient and conclusory. (See, Reply at
8  5-8.)  The VE's expertise, however, provides the necessary foundation
9  for this testimony.  (See, Bayliss v. Barnhart, 2005 WL 2862068 (9th
10 Cir., filed Nov. 2, 2005.)
11     In her Cross-Motion, the Commissioner briefly argues that there
12 is no deviation which would pertain to Plaintiff's mental limitations.
13 (See Cross-Motion at 6-7, fn. 5.)  The Court does not deem it
14 necessary to address this issue, since Plaintiff's Motion clearly is
15 limited to the issue of physical limitations. (See Motion at 10, lines
16 6-12.)  Even if it were the case that Plaintiff is making such an
17 argument, however, the Commissioner's argument and summary of the
18 evidence correctly notes that Plaintiff's mental limitations do not
19 prohibit her from performing the identified jobs.
20     In her next issue, Plaintiff argues that the ALJ failed to
21 articulate any reasoning for rejecting the conclusion of Dr. Woodard,
22 a consultative examiner ("CE"), that Plaintiff would have a slight to
23 moderate impairment in her ability to complete a normal work week.
24 (Motion at 12, citing Lester v. Chater, 81 F.3d 821, 831-834 (9th Cir.
25 1995).)  The disagreement the Court has with Plaintiff's argument is
26 primarily in its characterization; that is, that the ALJ "rejected"
27 Dr. Woodard's opinion. A physician's opinion typically is composed of
28 many discrete parts.  It is certainly not required that the ALJ accept

6

every single conclusion rendered by a physician; rather, the issue is whether the ALJ rejects, without sufficient explanation, critical portions of an examining physician's opinion. When medical evidence is in conflict, the Commissioner has discretion to choose between the contradictory evidence. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1987). The Court must be able to determine the basis for the decision and whether substantial evidence supports it. See Lewin v. Schweiker, 654 F.2d 631, 634 n.7, 635 (9th Cir. 1981). Under this framework, the Court will examine the issue raised by Plaintiff.

Dr. Woodard performed three consultative examinations of Plaintiff. (See AR volume 1, 330-333; volume 2 at 152-154, 540-542.) Following his first examination, Dr. Woodard found slight to moderate impairments for withstanding normal stresses and pressures in the workplace and for interacting with the public; slight impairments for interacting with supervisors and co-workers, and for maintaining concentration and attention and performing detailed, complex tasks; and no limitations for performing simple, repetitive tasks. He found no incapacity for working on a continuous basis without special supervision and slight to moderate impairments for completing a normal work week without interruption. (AR 332.) Following his next examination, Dr. Woodard reached the same conclusions with regard to Plaintiff's ability to adapt to work situations. (AR volume 2 at 154.) Finally, following his third examination, Dr. Woodard reached identical conclusions, except he found a moderate limitation in Plaintiff's ability to complete a normal work week without interruption. (AR volume 2 at 542.)

The ALJ found that as of January 1, 2000, Plaintiff's mental RFC

7

enabled her to perform moderately complex tasks in a habituated, task-oriented work environment with no intense interpersonal interactions. (AR volume 2, 224-225.)  In reaching this conclusion, the ALJ indicated he placed substantial reliance on the testimony of the mental ME, Dr. Malancharuvil. (See AR volume 2 at 232-233.)  The ALJ also relied upon the examinations by Dr. Woodard, an additional consultative psychiatric evaluation by Dr. Ibraheem, and reports from Plaintiff's treating psychiatrist and the conclusions of five State Agency reviewing psychiatrists. (See AR volume 2 at 228-233.)

Dr. Malancharuvil did not find that Plaintiff would have slight or moderate impairments with regard to completing a work week.  His opinion is consistent with other evidence in the record, and thus can constitute substantial evidence. See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999).  Dr. Ibraheem performed a comprehensive examination and concluded that, "from a psychological standpoint, [Plaintiff] would be able to tolerate the stress inherent in the work environment, maintain regular attendance, and work without supervision.  She would be able to interact with supervisors, co-workers, and the general public." (AR volume 2 at 501.)

It should also be noted that Dr. Malancharuvil, in his testimony, specifically compared Plaintiff's mental limitations with the stresses and other mental requirements associated with the two jobs identified by the VE. (See AR volume 2 at 294-301.)  In addition, Dr. Malancharuvil relied upon Plaintiff's ability to perform activities of daily living ("ADLs"), which substantially equate with the mental requirements of the identified jobs.  Thus, Dr. Malancharuvil's testimony was hardly given in a vacuum.

Is it also noteworthy that five State Agency psychiatrists

8

evaluated Plaintiff's mental impairment based on their review of the records. Four of the five concluded that she had no significant limitations in her ability to complete a normal work day or work week without interruption. (See AR volume 1 at 162, 270; AR volume 2 at 512, 536.) Although one of the five psychiatrists felt that Plaintiff had a moderate limitation in her ability to complete a normal work day or work week without interruption (AR volume 2 at 168), he also opined that Plaintiff was capable of performing simple, repetitive and complex tasks on an eight hour per day, 40 hour work week schedule with only slight to moderate limitations. (AR volume 2 at 169.)

Thus, the ALJ determined a mental RFC which was substantially consistent with the bulk of the medical evidence in the record, including most of the conclusions of Dr. Woodard. The Court does not view the ALJ's failure to adopt each and every conclusion of Dr. Woodard as equivalent to a "rejection" of Dr. Woodard's opinion. Even if the ALJ did reject that portion of Dr. Woodard's opinion, however, because it was inconsistent with the conclusions of another examining source, it was not necessary for the ALJ to specifically lay out reasons for rejecting that discrete portion of Dr. Woodard's opinion.

Plaintiff's next argument is that the ALJ failed to "articulate legally sufficient reasons for rejecting [her] testimony..." (Motion at 19.) Indeed, the ALJ found a lack of credible complaints of a disabling dysfunction, pain or depression. (AR volume 2 at 235.) In doing so, the ALJ found that the objective medical evidence fails to support the range of Plaintiff's subjective complaints. As noted by the ALJ, "in fact, four different consultative examiners concluded that there were no physical functional limitations or they were very mild limitations." (AR volume 2 at 234.) Similarly, the ALJ found

1 substantial improvement in Plaintiff's mental health (AR volume 2 at
2 235), as substantiated by the evidence.  Finally, Plaintiff's other
3 work activities, and her ADLs, substantially contradict her subjective
4 complaints.  These are reported in detail in the ALJ's decision (see
5 AR, volume 2 at 233-234), and significantly, Plaintiff does not assert
6 in her Motion that the ALJ incorrectly cited any of this evidence.
7 Certainly, the extent and nature of Plaintiff's ADLs, and her job of
8 physically caring for her father and other home-care clients, are
9 activities which are inconsistent with Plaintiff's allegations that
10 she is disabled by her physical and mental limitations.  These factors
11 come within the ambit of traditional credibility analysis, and
12 certainly provide a sufficient and specific basis for the ALJ to have
13 discredited Plaintiff's complaints.  See Fair v. Bowen, 885 F.2d 597,
14 603 (9th Cir. 1989).

15 Plaintiff contends, and the Commissioner concedes, that the ALJ
16 failed to strictly adhere to the Appeals Council's order that the
17 March 1999 and April 2001 applications be consolidated.  As to this
18 issue, the Court **ORDERS** that the Commissioner issue a decision finding
19 a closed period of disability from October 3, 1998 through December
20 31, 1999, which incorporates Plaintiff's March 1999 Title II
21 application for DIB as the basis for this finding.

22 For the foregoing reasons, Plaintiff's Motion for Summary
23 Judgment is **DENIED**, with the exception of the modification to the
24 Commissioner's final decision, which will comport with this Order
25 //
26 //
27 //
28 //

10

insofar as incorporating Plaintiff's March 24, 1999 Title II DIB application.  The Commissioner's Cross-Motion for Summary Judgment is **GRANTED**, and the matter will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: November 14, 2005

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE